IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| M.B.S., a minor, by and through her Mother and Next Friend, ALEXANDRA LAUREN REED, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIV. A. NO. 21-0553-MU |
| DANT CLAYTON CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 41), Defendant's Supplement to Motion for Summary Judgment and Supporting Argument and Exhibit (Docs. 44, 45), Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 46), and Defendant's Reply in Support of Motion for Summary Judgment (Doc. 55). The Court conducted oral argument on Defendant's motion on March 20, 2023. Upon consideration of the parties' briefs, all evidentiary materials submitted, oral argument, and the relevant law, the Court finds that Defendant's Motion for Summary Judgment is due to be **GRANTED.**

### I. Introduction

Plaintiff M.B.S. ("minor"), through her mother and next friend, Alexandra Lauren Reed, filed the instant action against Defendant Dant Clayton and a number of fictitious defendants on December 28, 2021.[1] Plaintiff filed her First Amended Complaint on May 17, 2022.

---

[1] All claims against the fictitious parties are hereby **DISMISSED** because fictitious party pleading is not allowed in federal court and Plaintiff has not sought to substitute any

(Doc. 24). In her amended complaint, Plaintiff alleged claims for product liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and for common law negligence and wantonness due to injuries sustained by the minor when she fell from bleachers manufactured by Dant Clayton. (Doc. 24).  In its answer, Dant Clayton denied liability for the minor's injuries. (Doc. 25). This Court has diversity jurisdiction over this matter.

## II.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

   **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

   **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

---

named party for a fictitious defendant. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

Fed. R. Civ. P. Rule 56(c).

Defendant seeks summary judgment and therefore bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether the nonmoving party has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter…. Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992).

The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). Likewise, conclusory allegations are insufficient to create a genuine issue of material fact and, therefore, do not suffice to defeat a motion for summary judgment. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) ("conclusory assertions…, in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

### III. <u>Undisputed Material Facts</u>

On February 13, 2017, while attending a soccer game at Daphne High School with her family, the 14-month-old minor fell from the bleachers to the concrete below. (Doc. 41-2 at pp. 3, 5-8; PageID. 156-61). The minor was at the soccer game with her aunt, Carlie Reed, her father, Matthew Shackleford, and her grandfather, Sid Reed. (*Id.*). Alexandra Reed, the mother of the minor and named Plaintiff, was not present at the soccer game that day. (*Id.* at p. 7; PageID. 160). The family arrived late in the afternoon, at about 3:30 p.m. or so, and found seats on the bleachers to watch the game. (*Id.* at pp. 5-8; PageID. 158-61). The family all sat in a line with Carlie sitting between Matthew and Sid. (Doc. 41-3 at p. 5; PageID. 172). The minor, who was wearing a Columbia jacket because it had been raining, stood between Carlie's legs, with Carlie holding her underneath her arms. (*Id.*). During the game, the minor slipped and fell backwards through the opening behind her feet and onto the concrete below. (*Id.*). The bleachers were moldy and slippery where the minor had been standing on the bleachers. (*Id.*).

Carlie was one of the minor's caretakers on the day of the accident, in addition to the minor's father who was within ten feet of her at the time of the incident. (Doc. 41-2 at p. 9; PageID. 162; Doc. 41-3 at pp. 3-4; PageID. 170-71). The minor's father testified that it was obvious that there were openings between the footboard and seat of the bleachers. (Doc. 41-2 at p. 14; PageID. 167).

4

Daphne High School is part of the Baldwin County Public School system ("BCPS"), where Carl Edward "Eddie" Tyler is the Superintendent. (Doc. 41-5 at p. 1; PageID. 179). Mr. Tyler originally started working for the BCPS in 1987, and he was a teacher, Athletic Director, and Head Football Coach at Daphne High School when it opened in 1989 until the 1993-1994 school year. (*Id.*). Mr. Tyler stated, via affidavit, that the bleachers from which the minor fell were erected at Daphne High School in 1989 on the home side of the football field and were later moved to the visitor's side of the football field by unknown individuals during his tenure. (*Id.*).

Dant Clayton's expert Jason R. Legg, a registered architect, inspected the bleachers and measured the open spaces. He found that the largest measured distance or gap between the footboards and seats measured 8¼ inches and the largest measured distance between any two footboards was less than 9 inches. (Doc. 41-7 at p. 3; PageID. 185). The opening between the footboards and seats on the subject bleachers complied with design and safety criteria outlined in model building codes, National Fire Protection Association ("NFPA") safety standards, and industry standards circa 1989. (*Id.*). Model building codes, safety, and industry standards at the time the bleachers were erected in 1989 allowed for the passage of no more than a 9-inch sphere between footboards and seats. (*Id.*).

Dant Clayton submitted a proposal in 2006 and a different proposal in 2007 to Daphne High School to renovate the bleachers. (Doc. 41-8 at pp. 3-4; PageID. 206-07). One proposal included renovations to the bleachers that would have closed off the gap where the minor would eventually fall more than ten years later, and the other option proposed to replace the existing bleachers with an entirely new bleacher system.

5

(*Id.*). However, Dant Clayton was not awarded the work for the proposal in 2006 or 2007, and because the bleachers remained in 2017, it appears that no other company was awarded such work. (*Id.*).

## IV. Conclusions of Law

### A. AEMLD Claim

To establish liability under the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD"), a plaintiff must establish that she suffered injury or damage caused by a product in a defective condition that is unreasonably dangerous to the ultimate user of the product when the product is expected to reach the user without substantial change in the condition in which it was sold. *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.,* 395 So. 2d 991, 994 (Ala. 1981); *Atkins v. Amer. Motors Corp.*, 335 So. 2d 134, 141 (Ala. 1976). In an AEMLD action, "the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition." *Jordan v. Gen. Motors Corp.*, 581 So. 2d 835, 836-37 (Ala. 1991) (quotations omitted). "Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained." *Id.* at 837. "Proof of an accident and injury is not in itself sufficient to establish liability under the AELMD; a defect in the product must be affirmatively shown." *Tanksley v. ProSoft Automation, Inc.,* 982 So. 2d 1046, 1051 (Ala. 2007).

"In order to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]." *Haney v. Eaton Elec., Inc.,* 528 F. Supp. 2d 1262, 1269 (N.D. Ala. 2007) (quoting *Bagley v. Mazda Motor Corp.*, 864

6

So. 2d 301, 312 (Ala. 2003)) (internal quotation marks omitted). To prove the existence of a safer, practical, alternative design, a plaintiff must prove that the injuries would have been eliminated or reduced by use of the alternative design and that, "taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probably seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used." *Id.* Simply showing that a safer product could have been designed does not prove that an alternative design existed at the time the product was manufactured. *See Beech v. Outboard Marine Corp.,* 584 So. 2d 447, 450 (Ala. 1991).

The bleachers from which the minor fell were erected at Daphne High School in 1989 on the home side of the football field and were later moved to the visitor's side of the football field by unknown individuals. (Doc. 41-5 at p. 1; PageID. 179). The minor fell in 2017, after the bleachers were moved to the visitor's side. Dant Clayton's expert, Jason R. Legg,[2] a registered architect, inspected the bleachers and found the largest measured distance or gap between the footboards and seats measured 8¼ inches and the largest measured distance between any two footboards was less than 9 inches. (Doc. 41-7 at p. 3; PageID. 185). Model building codes, safety standards, and industry standards at the time the bleachers were erected in 1989 allowed for the passage of no more than a 9-inch sphere between footboards and seats. (*Id.*). The measured opening

---

[2] Legg's is the only expert opinion that can be considered in this case because Plaintiff's expert disclosure was stricken. (Doc. 60).

between the footboards and seats on the subject bleachers complied with design and safety criteria outlined in model building codes, National Fire Protection Association ("NFPA") safety standards, and industry standards that were in existence at the time the bleachers were manufactured. (*Id*.).

Plaintiff has offered no evidence in support of her contention that the bleachers were defective, nor has she offered proof that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]." *Haney v. Eaton Elec., Inc.,* 528 F. Supp. 2d 1262, 1269 (N.D. Ala. 2007) (quoting *Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 312 (Ala. 2003)) (internal quotation marks omitted). Accordingly, Dant Clayton is entitled to summary judgement in its favor as to Plaintiff's claim under the AEMLD.

## B. Negligence Claim

In count two of her amended complaint, Plaintiff alleges that Dant Clayton was "negligent and wanton in [its] failure to properly design, manufacture, engineer, advertise, sell, install, inspect, replace, repair and/or warn the consumer of the dangers of the Alum-A-Stand bleachers." (Doc. 24 at p. 4; PageID. 86). To sustain a claim for negligence, Plaintiff must prove "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *Taylor v. StrongBuilt, Inc.,* Civ. A. No. 09-0806-KD-C, 2011 WL 4435601, at *8 (S.D. Ala. Sept. 23, 2011) (quoting *QORE, Inc. v. Bradford Bldg. Co.*, 25 So. 3d 1116, 1123 (Ala. 2009)).

Like Plaintiff's AEMLD claim, Plaintiff's claim that Dant Clayton negligently failed to properly design, manufacture or engineer the bleachers fails because Plaintiff has offered no evidence that the bleachers were defective at the time they were manufactured and installed at Daphne High School. The undisputed evidence shows that the spacing between the footboard and seat met all applicable industry standards and codes at the time the bleachers were manufactured and installed at Daphne High School in 1989. In addition to there being no evidence of any defect in the bleachers at the time of their manufacture and installation, there is no evidence that Dant Clayton was aware of any previous incidents of a person falling through any gap in the bleachers prior to or at the time of their manufacture and installation. The two cases involving bleachers manufactured by Dant Clayton cited by Plaintiff are not relevant to Dant Clayton's knowledge or to the foreseeability of this accident because those cases arose well after 1989.

The evidence also supports the conclusion that no reasonable jury could find that it was foreseeable to Dant Clayton that, 28 years after it manufactured a set of bleachers, adult caregivers would fail to protect a toddler from falling from bleachers where the opening between the seat and the footboard was admittedly obvious and when the bleachers were admittedly wet, slippery, and moldy at the time. (Doc. 41-3 at p. 5, PageID. 172; Doc. 41-2 at p. 14, PageID. 167). *See Williamson v. Tyson Foods, Inc.,* 626 So. 2d 1261, 1266 (Ala. 1993) (finding that it was unforeseeable to defendant that a young child's father would not properly protect the child from a known danger); *Williams v. BIC Corp.,* 771 So. 2d 441, 451 (Ala. 2000) (applying *Tyson Foods* holding in a product liability action).

Plaintiff's claim that Dant Clayton negligently advertised, sold, or installed the bleachers also fails because Plaintiff has offered no evidence whatsoever relating to advertising of these bleachers or the sell or installation of the bleachers.

Plaintiff also alleges that Dant Clayton was negligent in inspecting, replacing, and repairing the bleachers; however, Plaintiff has not shown that Dant Clayton had a duty to inspect, replace, or repair. Alabama law does not require manufacturers to make post-sale modifications to their products. *See Holland v. Walter Kidde Portable Equip., Inc.*, Case No. 2:05-cv-325-TMP, slip op. at pp. 13-14 (N.D. Ala. Oct. 9, 2007) (citing *Ala. Power Co. v. Marine Builders, Inc.*, 475 So. 2d 168, 172-73 (Ala. 1985)). Notwithstanding the fact that it had no duty, Dant Clayton provided two proposals to renovate or replace the bleachers prior to the minor's fall, but the owner rejected both proposals. (Doc. 41-8 at pp. 3-4; PageID. 206-07). Therefore, this claim fails, as well.

Finally, Plaintiff's negligent failure to warn claim can also not withstand summary judgment. Under Alabama law, Plaintiff must prove that Dant Clayton "failed to warn adequately of the dangers associated with the use of the [bleachers] and that its failure to do so proximately caused the injury of which she complains" to prevail on her failure to warn claim. *Deere & Co. v. Grose*, 586 So. 2d 196, 198 (Ala. 1991). "[A]s concerns proximate cause, a negligent-failure-to-warn-adequately case should not be submitted to the jury unless there is substantial evidence that an adequate warning would have been read and heeded and would have prevented the accident." *Id.* (citations omitted). Plaintiff has submitted no evidence that would support a finding that any warning that could have been provided by the manufacturer would have been read or heeded or prevented the accident. Moreover, there is no duty to warn when the condition is open

and obvious. *See Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009). "A condition is 'open and obvious' when it is 'known … or should have been observed … in the exercise of reasonable care.'" *Daniels v Wiley*, 314 So. 3d 1213, 1225 (Ala. 2020) (citations omitted). In this case, the minor's father, who was with her at the time of the accident, testified that it was obvious that there was an opening between the footboard and the seat of the bleachers. (Doc. 41-2 at p. 14, PageID. 167). Therefore, Plaintiff cannot prove duty or proximate cause on the failure to warn claim.

Because there is no genuine issue of material fact and Dant Clayton is entitled to judgment as a matter of law on Plaintiff's negligence claim, summary judgement is due to be entered in favor of Dant Clayton on this claim.

## C. <u>Wantoness Claim</u>

Under Alabama law, to sustain a wantonness claim, Plaintiff must prove that Dant Clayton consciously did an act or omitted a duty knowing that from doing or omitting to do the act injury would likely or probably result. *See Ex parte Essary,* 992 So. 2d 5, 9 (Ala. 2007) (*cited in Etheridge v. Belk, Inc.,* Case No. 2:21-cv-00413-NAD, 2023 WL 2026532, at *6 (N.D. Ala. Feb. 15, 2023)). Section 6-11-20(b)(3) of the Alabama Code defines wantonness as "[c]onduct which is carried on with a reckless and conscious disregard for the rights or safety of others." "Alabama courts have recognized that wantonness requires an 'act done or omitted with knowledge of the probable consequence and with reckless disregard of such consequence.'" *West v. Janssen Pharmaceuticals, Inc.,* Case No. 2:15-cv-553-WKW-DAB, 2018 WL 1977258, at *12 (M.D. Ala. Apr. 4, 2018) (quoting *Scharff v. Wyeth*, No. 2:10-cv-220-WKW, 2012 WL 3149248, at *3 (M.D. Ala. Aug. 1, 2012)). Plaintiff has presented no evidence that

11

Dant Clayton acted wantonly in this case. Indeed, Plaintiff failed to raise any argument in response to Dant Clayton's motion for summary judgment on her wantonness claim. *See* Doc. 46. Therefore, Dant Clayton is also entitled to summary judgment on Plaintiff's wantonness claim.

## V. CONCLUSION

For the reasons stated herein, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED.** A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the *Federal Rules of Civil Procedure*.

**DONE** and **ORDERED** this the **28th** day of **April, 2023**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**